Dana MATTIZA, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–89–992–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 21, 1990.

Rehearing Denied Dec. 20, 1990.

Stanley G. Schneider, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before PAUL PRESSLER, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction of the felony offense of theft from a person. Appellant entered a plea of not guilty and, after a jury trial, was found guilty as charged in the indictment. The jury assessed punishment at six years in the Texas Department of Corrections, probated, and a $6,000 fine. In two related points of error, appellant complains that the trial court erred in denying his motion for a directed verdict and that there was insufficient evidence to support his conviction of theft from a person. We affirm.

On March 9, 1989, the Internal Affairs Division (IAD) of the Houston Police Department conducted an investigation into an allegation of theft against the appellant, an officer with the Department. IAD set up a "controlled arrest situation" where, unknown to appellant, Officer Ruben Leija posed as a prisoner who had been arrested pursuant to a warrant. Leija was given three $100 bills, seven $20 bills and five $5 bills for a total of $465. Sergeant Paul Lindsey photocopied the serial numbers of the bills given to Leija. Thirty dollars was placed in Leija's left front pocket, ten dollars in his right front pocket, and the remainder was placed in his wallet which he carried in his left rear pocket. Leija was allowed to drink some beer so that he would appear intoxicated. Sergeant Manuel Zamora took Leija to the 200 block of 75th Street in Houston where Leija was handcuffed and placed in Zamora's vehicle. Sergeant Mike Angel and Officer Nelson Cox parked across the street from the arrest location in an unmarked van to videotape the arrest and exchange of the "prisoner." Zamora radioed appellant to come pick up the prisoner and transport him to the Sex Crimes Office of the Houston Police Department. Zamora told appellant that he would meet appellant and the prisoner at the Sex Crimes Office later.

Appellant placed Leija in the back seat of his patrol car and Leija slumped over the seat on his right side, leaving his left front pocket exposed. On the way to the Sex Crimes Office, the patrol car came to a stop and appellant reached over the seat and took the thirty dollars from Leija's left front pocket. Appellant and Leija arrived at the Sex Crimes Office and were met by Sergeant Zamora shortly thereafter. Zamora told appellant that he would take the prisoner from appellant. However, appellant proceeded into the building with Zamora and Leija. Zamora told appellant to prepare a police blotter on Leija. Leija was placed in an interviewing room and requested Zamora to take him to the men's bathroom. While in the bathroom, Leija quickly told Zamora that appellant had taken the thirty dollars from his left front pocket. When Zamora and Leija returned to the interviewing room, appellant insisted on taking Leija to the county jail for booking.

After appellant and Leija reached appellant's patrol car, appellant searched Leija before putting him into the car. Appellant took everything from Leija's pockets, including his wallet. Appellant placed Leija in the back seat of the patrol car where Leija slumped into the seat once again. Appellant got into the driver's seat of the patrol car but did not start the car immediately. Leija testified that they sat in the car for approximately ten minutes and appellant appeared to be doing some paperwork during that time. Subsequently, appellant took Leija to the county jail where they were intercepted by Zamora. Zamora told appellant that he needed to take custody of Leija because there was a question as to Leija's identity. Appellant turned over the police blotter, Leija's wallet, keys and pocketknife to Zamora. Zamora took Leija inside the building and to the cafeteria. Zamora counted the money in Leija's wallet and discovered a $100 bill was missing. Zamora and Leija returned to the IAD offices where the money in Leija's wallet was

counted once again. Sergeant Angel and Officer Cox arrested appellant later in the morning of March 10, 1989 as he tried to depart the Magnolia substation in his personal vehicle. Subsequently, Angel obtained a search warrant for appellant's vehicle where the missing $100 bill was discovered inside appellant's wallet.

■ The test for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989). The jurors are the exclusive judges of the facts, the credibility of the witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981). A jury is entitled to accept one version of the facts and reject another or reject any of a witness' testimony. *Id.* A directed verdict of acquittal is proper where, as a matter of law, there is insufficient evidence of the elements of the crime charged. *See generally McKenzie v. State*, 617 S.W.2d 211, 217–18 (Tex.Crim.App.1981); *State v. Westergreen*, 707 S.W.2d 260 (Tex.App.—Corpus Christi 1986, orig. proceeding).

■ The Texas Penal Code provides that a theft occurs when a person unlawfully appropriates property with intent to deprive the owner of property. TEX.PENAL CODE ANN. § 31.03(a) (Vernon 1989). The theft offense is a third degree felony if the property is stolen from the person of another. *Id.* § 31.03(e)(4)(B). It is not necessary that the appropriation of property be with actual or threatened violence to sustain a conviction of theft from the person. *Cook v. State*, 706 S.W.2d 775, 778 (Tex. App.—Houston [14th Dist.] 1986, no pet.). The intent to permanently deprive the owner of property must exist at the time of the taking. *Peterson v. State*, 645 S.W.2d 807, 811 (Tex.Crim.App.1983). However, specific intent to commit theft can be inferred from the surrounding circumstances. *Co-*

*ronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim.App.1974).

Essentially, appellant contends in his brief to this court, and in his brief in support of his motion for instructed verdict in the court below, that there could be no "theft from the person" because he had authority as a police officer to take Leija's property once Leija had been taken into custody. Therefore, appellant claims, there could be no unlawful taking from Leija's person.

To support appellant's conviction of theft from the person, the State had to prove beyond a reasonable doubt that appellant had the intent to permanently deprive Leija of the $100 at the time appellant took the wallet and discovered that the wallet contained money. Sergeants Zamora and Angel testified that appellant had a duty to conduct an inventory of Leija's property for the purpose of safeguarding the property while Leija was in custody. However, both officers agreed that the taking of Leija's property and the subsequent inventory were valid only for that purpose. Further, both officers testified that appellant had no authority to convert Leija's property to appellant's personal use.

The record reflects that the inventory completed by appellant listed only two of the three $100 bills that Leija had in his wallet. Zamora testified that appellant had not completed the "blotter" when they were at the Sex Crimes Office. Leija testified that appellant searched him and took his wallet after they left the Sex Crimes Office. Leija also testified that he did not consent to the taking of his property. Further, Leija stated that appellant appeared to be doing "some paperwork" while they sat in appellant's patrol car in front of the Sex Crimes Office before appellant took him to the county jail. Zamora stated that appellant turned over the blotter with appellant's property when he intercepted appellant and Leija at the county jail. Therefore, given the circumstances surrounding appellant's discovery of Leija's wallet, the omission of one $100 bill from the police blotter, the missing $100 bill and its subsequent discovery in appellant's wallet, we

hold that a rational trier of fact could have found beyond a reasonable doubt that appellant had the intent to permanently deprive Leija of the $100 at the time appellant took Leija's wallet.

■ Appellant's duties with respect to his prisoner's property were akin to those of a fiduciary. Appellant had the duty to protect and safeguard Leija's property and to prepare an inventory of that property. When appellant decided to unlawfully and permanently deprive Leija of the $100, he was exercising unauthorized control over Leija's property. *Freeman v. State,* 707 S.W.2d 597, 605 (Tex.Crim.App.1986) (plurality opinion). Appellant wore two hats, one of a police officer and one of a thief. When he formed the intent to take the money and keep it for his own use and benefit, he wore the hat of the thief. Therefore, he cannot claim the protection afforded to those wearing the hat of a police officer because he chose not to wear that hat at that moment in time. We hold that it was within the province of the jury to find that appellant formed the intent to take the money for his own use and benefit *before* he searched Leija. We hold the crime occurred *at the time of the taking,* and that the taking was unauthorized. *See Freeman v. State, supra.*

After reviewing the record and viewing the evidence in the light most favorable to the verdict, we find there was sufficient evidence to sustain appellant's conviction of theft from the person. Further, because the circumstances surrounding the occurrence raised a fact issue as to appellant's intent at the time of the taking of Leija's wallet, appellant would not have been entitled to an instructed verdict of acquittal. We overrule appellant's two points of error. The judgment of conviction is affirmed.